No. 43,806

STATE OF KANSAS, *Appellee,* v. MERRITT GRIMES, *Appellant.*

(392 P. 2d 926)

Opinion filed June 6, 1964.

*Edgar Wm. Dwire,* of Wichita, argued the cause, and *Gerald D. Lasswell* and *E. L. Malone,* of Wichita, were with him on the briefs for appellant.

*Artie E. Vaughn,* Deputy County Attorney, of Wichita, argued the cause, and *William M. Ferguson,* Attorney General, of Topeka, and *Keith Sanborn,* County Attorney, of Wichita, were with him on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: The defendant, Merritt Grimes, was tried by the court and convicted of driving a motor vehicle while under the influence of intoxicating liquor, a misdemeanor, in violation of G. S. 1961 Supp., 8-530, and he has appealed.

When the case was heard on its merits, counsel for the appellant stated the only question involved was whether the district court's finding that the appellant was guilty of driving a motor vehicle while under the influence of intoxicating liquor was sustained by sufficient evidence. Hence, we review only such evidence as tends to support the conviction.

On August 16, 1962, Trooper Becker, a member of the State Highway Patrol, observed Grimes driving a 1961 Buick automobile near mile post 199 on the Kansas Turnpike in Sedgwick County. The defendant was driving slow and erratically in a southeasterly direction. Trooper Becker stopped the defendant after having been directed to his automobile by the flashing headlights of a vehicle

and the driver motioning Becker to the rear and in the direction of defendant's automobile. When Becker first observed Grimes, he was being followed by several cars that were apparently reluctant to pass at the time. As Becker passed the cars trailing Grimes, he turned around and followed Grimes south and got in behind him and observed him a short distance going between 20 and 25 miles an hour. Within a short distance, Becker observed Grimes drive off on the shoulder of the road and twice swerve across the center line of the highway, which was well marked. Becker then pulled ahead of Grimes and stopped him. After Grimes was stopped, his vehicle was situated with only the right wheels off on the shoulder with approximately two-thirds of the vehicle still on the roadway. Becker got out of his patrol car, went back to Grimes' vehicle, and asked him to get out of the car. Grimes looked at Becker but apparently failed to comprehend his statement. Becker then opened the door and assisted him out. When Grimes got on his feet, Becker had difficulty in keeping him erect and had to support him. Becker took Grimes to his patrol car and went back to drive Grimes' car off the roadway. Before he got into the car, Grimes got out of the patrol car and came up to Becker and had to be taken back and placed into the patrol car the second time. Grimes gave no explanation or reason for getting out of the patrol car. Becker noticed a very strong odor of alcohol on Grimes' breath. Becker told Grimes he had been stopped for driving a motor vehicle while under the influence of alcohol and that he was driving very erratically, weaving back and forth across the road, to which Grimes replied, "I'm glad you stopped me; as drunk as I am I might have killed someone." Grimes further told Becker that he had been drinking whiskey, and when asked how much he had been drinking, Grimes replied, "I spent $200.00 last night getting drunk." Becker asked Grimes, "Where did you stop drinking?" and Grimes replied, "Back there where I gave the bottle to two other guys." Grimes told Becker that he was not ill; that he was not a diabetic and was not taking insulin, and that he had about eight hours sleep the night before.

While enroute to the Sedgwick County Hospital, Becker requested that Grimes submit to a blood-alcohol test, but Grimes refused. Becker observed that Grimes was polite and co-operative when he could make him (Grimes) comprehend his questions. Upon arrival at the hospital, Becker again asked Grimes to take

the blood-alcohol test and explained to him that his refusal to take the test would result in a mandatory suspension of his driving privileges for 90 days. Grimes still refused to take the test, and was taken to the county jail. As his reason for refusing to take the blood-alcohol test, Grimes said, "Well, you and I both know I am drunk; I refuse to take the test."

At the county jail Grimes was given the walking test which was observed by Becker and also by James R. Wolkom, who was with Becker from the time Grimes was picked up until he was booked. Grimes performed the test, but he stumbled quite frequently and at no time would he make the heel touch the toe as instructed, but, rather, took steps of approximately two to three feet. Grimes was very uncertain when asked to turn, and had difficulty in maintaining his balance. On the finger-to-nose test, both the right and left arms of Grimes were extended, and Becker asked him to touch the tip of his nose first with the right index finger, and Grimes missed his nose completely. When performing the test with his left index finger he again missed his nose. Becker then put two coins on a table in front of Grimes and instructed him to make one coin a "head" which was a "tail" with his left hand, and then reverse the procedure with his right hand. Grimes again was very slow with both hands and he had difficulty in picking the coins up and turning them over. Grimes' speech was confused, his choice of words was poor, and his pronunciation was very thick-tongued. Becker stated that it was his conclusion, after observing and witnessing Grimes at the time he arrested him and after the tests were given, Grimes was greatly impaired in his ability to operate his motor vehicle and that the effect of alcohol in Grimes was extreme, and that he was "The most inebriated driver I have ever seen."

Wolkom testified on behalf of the state that he was a photographer employed by the Kansas Turnpike Authority and was riding with Becker while on patrol on the turnpike on August 16, 1962; that Becker stopped Grimes who was driving a 1961 Buick automobile in a southerly direction, and that Grimes' car was "weaving"; that Becker had to help Grimes out of his car and back to the patrol car; that when Becker went back to Grimes' car, Grimes got out of the patrol car and had to be brought back the second time; that while in the patrol car, Grimes stated, in the presence of Wolkom and Becker, he had been out the night before and spent $200 getting drunk, and that the people where he had purchased sweet corn at

a produce stand shortly before he drove upon the turnpike told him "that he was too drunk to drive." Wolkom further testified that Grimes was "pretty drunk"; that he could hardly walk; that he smelled of the odor of alcohol, and that his speech was "slurred."

Grimes testified in his own behalf and stated that he consumed approximately one-fourth of a pint of whiskey shortly before he got on the turnpike and "Just kind of got nauseated and—sleepy." He further testified, "and I could see that I wasn't getting anywhere very well and I thought, 'well, if I stop here I'll have to leave the motor running in that hot sun, might be worse off,' I didn't want to do that with the air conditioner so I just made up my mind I'd drive to the next bridge and roll my glasses down. If I didn't get to feeling better, just come back." He testified that when he was stopped by Becker he thought he was off on the shoulder but that he was not, and that he did not feel "so good"; that he was more nauseated than under the influence of liquor, and that he was sick to his stomach. During his testimony, Grimes never specifically denied being under the influence of intoxicating liquor or being ill from his consumption of whiskey.

Our statute (G. S. 1961 Supp., 8-530) provides:

"(a) It is unlawful . . . for any person who is under the influence of intoxicating liquor to drive any vehicle within this state . . ."

As is observed, the statute does not make it unlawful to drive a vehicle while "intoxicated," but, rather, it makes it unlawful for any person who is "under the influence of intoxicating liquor" to drive any vehicle. The language of the statute parallels the language of the statutes (G. S. 1949, 8-530 and R. S. 1923, 21-2160) examined in the case of *State v. Hayden,* 126 Kan. 799, 271 Pac. 291. In that case the defendant was convicted of driving while under the influence of intoxicating liquor, and it was held that he was not in a position to complain of an instruction to the jury, which reads in part:

" '. . . Whenever a man is under the influence of liquor so as not to be entirely himself, he is intoxicated, although he may walk straight, and although he may attend to his business, and may not give any outward and visible signs to the casual observer that he is drunk, yet, if he is under the influence of liquor so as not to be himself, so as to be excited from it, and not to possess that clearness of intellect and control of himself that he otherwise would have, he is intoxicated.' " (l. c. 801.)

In the opinion it was said:

". . . So far as the degree or extent of the intoxication is concerned, the

statute only requires that it be shown that the person was 'under the influence of intoxicating liquor.' . . ." (l. c. 801.)

And it was further said:

". . . So we need not stop to inquire whether the court's definition of when one 'is intoxicated' is as full and complete as it should be, for the state did not have to show that defendant was intoxicated. . . ." (l. c. 801.)

In *Thornton v. Franse,* 135 Kan. 782, 12 P. 2d 728, it was said:

". . . It is an offense for one under the influence of intoxicating liquor to operate an automobile on the highway. (R. S. 21-2160.) To commit the offense it is not necessary that he be 'drunk' or 'intoxicated,' as those terms are ordinarily used. . . ." (l. c. 787.)

See, also, *State v. Spohr,* 171 Kan. 129, 134, 135, 230 P. 2d 1013.

Our decisions clearly establish that the effects of intoxicating liquor are the determining factor in cases of this kind and not whether the defendant was "drunk" or "intoxicated" as those terms are ordinarily understood. In this case the physical and mental impairment of appellant such as his erratic driving, slurred speech, inability to walk and stand erect, his incoherence, his confusion, and his inability to comprehend, as shown by the evidence, were specifically found by the district court to be the result of the "influence of intoxicating liquor," and there was an abundance of evidence to sustain the finding. The fact that the district court also found the appellant to be ill and sick as a result of having consumed intoxicating liquor does not lessen the force and effect of the finding.

Other contentions ably argued by the appellant have been considered, but we find no error which would warrant a reversal.

The judgment is affirmed.